SCHMECKPEPPER, Respondent, vs. CHICAGO & NORTHWEST-
ERN RAILWAY COMPANY, Appellant.

*January 16—February 3, 1903.*

Railroads: *Waters: Bridges: Obstructions: Damages: Appeal and error: Instructions to jury: Harmless error.*

1. Where, in an action against a railroad company for damages to lands caused by the overflow of a stream obstructed by a bridge erected and maintained by defendant, there was no material issue presented by the testimony except as to the amount of damages, errors in instructions to the jury in submitting other questions are immaterial.

2. In an action for damage to land from overflow caused by an embankment built by defendant with inadequate provision for carrying off the water of a stream, it is not necessary to a recovery that the particular damage caused should have been within the anticipation of a reasonably prudent person.

3. In an action for damages to land due to an embankment built by defendant, with inadequate provision for carrying off the water of a stream, causing an overflow of water during a specified storm, the evidence of damage was confined to that of experts, who testified to examinations of the land just before and just after that storm. *Held*, that it was immaterial whether other storms, preceding and subsequent to the storm specified, did or did not cause damage.

APPEAL from a judgment of the circuit court for Là Crosse county: J. J. FRUIT, Circuit Judge. *Affirmed.*

Action to recover damages by way of destruction of crops and permanent injury to soil from the casting of quantities of sand thereon, suffered by plaintiff, the owner of low lands adjoining Bostwick creek, by reason of the inadequacy of a

certain pile bridge constructed by the defendant across said creek; the inadequacy being alleged to be due both to original construction and subsequent obstruction of the spaces between the piles, so that it was insufficient to carry the waters of said creek under circumstances which might reasonably be expected. The damage was predicated upon a single storm occurring July 14, 1900. The evidence of permanent damage consisted of a comparison of the land shortly before that storm and immediately afterward. A special verdict was taken of eleven questions, to the following effect: (1) The bridge was of sufficient capacity to allow the passage of such waters as ought reasonably to have been expected to flow through it. (2) The bridge was not of sufficient capacity to allow the passage of "such waters, and any and all driftwood and other materials brought down by such waters, as ought reasonably to have been expected to flow through it." (3) The driftwood which floated down accumulated in and against said bridge, and caused the waters to flow over the plaintiff's land. (4) Damage was thereby done. (5) Such damage was the natural and probable result of the want of such sufficient capacity in the bridge. (6) The freshet of July 14, 1900, was not unusual nor extraordinary. (7) The storm of July 11, 1899, did not cause water to overflow the plaintiff's land and carry sand upon it, so as to permanently injure it. (8) Neither did the storm of October 27, 1900. (9) (Immaterial.) (10) Damage to crops, $209.65. (11) Permanent damage to plaintiff's land from the overflow of July 14, 1900, $700. Defendant moved to strike out the answers to the 5th, 7th, 8th, 9th, 10th, and 11th questions, and for judgment upon the corrected verdict and undisputed evidence, and, in the event of the denial of that motion, for new trial. Such motions were overruled, and judgment entered for the plaintiff for the amount of damages found in response to the 10th and 11th questions, from which judgment defendant appeals.

*Edward M. Hyzer,* for the appellant.

For the respondent there was a brief by *McConnell & Schweizer,* and oral argument by *J. F. McConnell.*

DODGE, J. After a careful examination of the evidence in this case, we are led to the conclusion that notwithstanding the special verdict of eleven questions and the numerous exceptions there was no material issue in the case, except the question of damages, as to which there was any conflict of evidence. That the bridge was inadequate to carry off the waters which might reasonably be expected to flow to it,— meaning, of course, the waters with their customary and expected accompaniment of silt and driftwood; that thereby, on July 14th, the plaintiff's lands were flooded so as to do damage as the natural and probable result thereof; that the freshet on that date was neither unusual nor extraordinary,— all these appear without dispute from the testimony of witnesses, offered both by plaintiff and defendant, and the court would have been justified either in answering said questions in favor of the plaintiff, or in directing a verdict in his favor, submitting only the question of damages.

From this view it of course results that errors of instruction in submitting any such questions are immaterial. Thus the industry of the trial court in describing to the jury the defendant's legal duty with reference to maintenance of bridges across watercourses, while wholly unnecessary to enable an answer to the simple question of fact submitted to them by the second question, cannot have prejudiced the defendant; for the negative answer to that question which the jury did give should have been ordered by the trial court.

An assignment of error predicated upon the failure of the court to inquire whether the quantity of driftwood carried against the bridge on July 14th was unusual and extraordinary is disposed of by the same consideration. The testimony may be searched in vain for anything to support an

affirmative answer to such a question, while defendant's road-master, who was present with his men endeavoring to keep the bridge from blocking up, testified expressly that it was such as usually came down in high water.

Another assignment of error, for that it was not left to the jury to find whether damage ought to have been anticipated by a person of ordinary intelligence and prudence, is equally without foundation. If such element be at all necessary to establish the liability of one who obstructs a watercourse for the damage resulting from overflow in the absence of extraordinary freshet, it certainly is matter of common knowledge that the setting back of water onto the low lying farm lands above an obstruction is likely to cause damage. It is not necessary to recovery that the particular damage caused should be within the anticipation of a reasonably intelligent and prudent person. *Mauch v. Hartford,* 112 Wis. 40, 60, 87 N. W. 816; *Meyer v. M. E. R. & L. Co., ante,* p. 336, 93 N. W. 6.

Upon the only remaining assignment of error, which is substantially to the effect that the court erred in not refusing to allow the jury to find any permanent damages, counsel for appellant devotes considerable space to the discussion of the probable effect of two other storms, which as he claims, were extraordinary and unusual, one occurring in June, 1899, and the other in October, 1900; apparently insisting that the separation of the damage done by the storm of July 14, 1900, from that caused by the other storms was pure conjecture. An examination of the evidence renders this position so obviously untenable that we are somewhat at a loss to understand appellant's insistence thereon. Doubtless if the plaintiff had sought to predicate permanent damages to the land upon a comparison between the conditions existing before any of these storms and those existing after all of them there would have been force to the argument that the jury could not say what part of the damage was due to one storm

and what to another; but the plaintiff presented no such case. His proof as to damages was mainly that of experts thoroughly familiar with the lands, who testified to an examination of them shortly before July 14, 1900, and who compared its then condition, after any change that might have been worked by the storm of the previous year, with its condition shortly after July 14, 1900, and before the storm of October of that year. This testimony left no room for damage caused by either of the other storms to enter into the damages testified to. The plaintiff declined to go into proof as to the effect of either of the other storms, except for the testimony of two or three witnesses in contradiction of a certain phase of the effect of that of October, 1900, and there was no issue in the evidence with reference to either of those storms. It was wholly immaterial whether they did or did not cause damage. If they did, that damage was excluded in the manner of offering the proofs. The only improper element in the trial with reference thereto was in submitting to the jury questions as to whether such other storms caused any damage and not in refusing to allow such ulterior immaterial considerations to defeat the effect of the answer of the jury to the only material question, namely, the amount of damage caused by the storm specified in the complaint. As to that question there was a fair conflict of expert evidence, the opinions varying from two or three hundred dollars on the one side to twelve or sixteen hundred dollars on the other, and the seven hundred dollars adopted by the jury was certainly within the limits of credible evidence.

No error prejudicial to appellant is presented by the record.

*By the Court.*—Judgment affirmed.